1  Name:
2  Address:
3  Telephone Phone:
4  Email:

**FILED**

Sep 10 2021
1:19 pm

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY          s/ dominicf          DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

Case No.:  **'21 CV1594 CAB LL**

(assigned at time of filing)

Plaintiff(s),

**COMPLAINT**

v.

Defendant(s).

**I.  RELATED CASES**

a.  Do you have other Civil Case(s) in this or any other federal court?

☐ Yes    ☑ No

b.  If yes, please list the case numbers here:

**II.  STATEMENT OF CLAIM** *(Briefly state the facts of your case. Describe how each defendant is involved, and tell what each defendant did to you that caused you to file this suit against them. Include names of any other persons involved, dates, and places.)*

1

**III.** **RELIEF YOU REQUEST** *(State exactly what you want the court to do for you. Do not use this space to state the facts of your claim.)*

To assist in my aquiring assistance in relocating to a healthier environment, assist in investing in products & items to live safely and securely in my daily living environment

**IV.    DEMAND FOR JURY TRIAL** *(Would you like a trial by jury on all claims pursuant to FRCP, Rule 38?)*

☑ Yes          ☐ No

I declare under penalty of perjury that the foregoing is true and correct.

September 10th 2021
Date

Raymond J Singleton
Signature

Raymonda J. Singleton
Printed Name

1  Raymonda Singleton
   6977 Navajo Road #207
2  San Diego, CA 92119
   619-816-7238
3  raymondasingleton@gmail.com

4  Raymonda Singleton. In Proper

5

6

7                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

8                     **FOR THE COUNTY OF SAN DIEGO**

9

10  Raymonda Singleton                    )  Case No.:   **'21 CV1594 CAB LL**
                                          )
11                    Plaintiff(s),       )  **Environment Health negligence**
                                          )  **1798.98**
12         vs.                            )  **AB2788/sections 8380, 8381**
                                          )
13  SDG&E, Cox Internet, Allconnect,      )
    Housing Urban and Development, Steven )  **Complaint**
14  Lee Properties, Navajo Bluffs, R.V.   )
    Management, Kaiser Hospital, California )  **Request for Jury Trail**
15  Medical Board, Bay Vista Housing      )
    Partners                             )  **DATE:** (
16                                        )  **TIME:**  (
                                          )  **DEPT:**  (
17                    Defendant(s).       )
                                          )  Judge:  (
18                                        )  Dept:   (
                                             Action Filed:
19                                           Trial Date:

20  I Plaintiff Raymonda Singleton bring this matter before the court due to defendants

21  SDG&E, Cox Internet, Allconnect, Housing Urban and Development, Steven Lee

22  Properties, Navajo Bluffs, R.V. Management, Kaiser Hospital, California Medical

23  Board, Bay Vista Housing Partners do business within this jurisdiction and venue.

24

25                            INTRODUCTION

26

27  I Raymonda Singleton bring this matter in front of our Judicial system due to

28  Defendants either being unknowledgeable or Ignorant and or dishonest of the Energy

1  Sources (Smart Meter) within our Housing Communities. I have for several years
2  have been damaged in consistently becoming ill within these housing communities
3  being that I am a Traumatic Brain injury survivor.  Upon the advice of my Medical
4  Support (physicians) a Judge in which assisted in my becoming the Law-Abiding
5  citizen that I have grown to be advised me in 2012 to relocate and move out of the
6  damaging housing community.  With This advice I relocated within the Chula Vista,
7  Otay Lakes, Eastlake area. 5 years within this area I became healthier began working
8  for the San Diego Community College District, refreshed my engineering degree.  I
9  felt so nice good and healthy. My housing came through (section 8) I decided to
10 move to an area closer to the San Diego City community college district, July of 2017
11 not even within a year by October 2017, I began being ill unable to keep my work
12 schedule go to classes as scheduled, at this point I knew something was wrong. After
13 suffering for years finally in March 2021 I find within these communities that they
14 have energy sources (smart meters) on these properties which directly connects these
15 entities to medical damages. Defendants continue to deny the damages that these
16 energy sources are capable of. THE MOST IMPOTANT REASON FOR THIS
17 CLAIM IS THE LIFE AND DEATH, LIFE LONGEVITY THIS HAS TO BE
18 ACKNOWLEDGE. My grandson passed with epilepsy, me my TBI. This has to be
19 brought to the attention of Americans citizens and the whole country.
20
21 SDG&E - Is connect to this claim for not giving sufficient warnings of the damages
22 that these Energy Sources (smart meters) are capable of and the damages that they are
23 capable of doing and not having a monitoring program in place to assure their
24 products and HAN devices are not damaging or being manipulated by their customers
25 with this energy and technology. This alone is the real reason that things are able to
26 go out of regulation. No set monitoring system, had me running around wondering
27 like crazy what is going on, damage my progress with my Traumatic Brain injury, for
28 years until I finally was told about the energy sources (smart meter). I'd like to add

they're the ones who give theses individuals access codes to these energy sources (smart meters).

Cox Internet – Is connected to this claim due to the denial of interruptions this energy sources are capable of in controlling of devices the turning on and off and they need to acknowledge the truth that the energy sources (smart meters) ride on the same Hz levels as the energy sources (smart meters) giving them also the ability to control devices in our homes. Is connected due to interruptions with emails not going through clocking data usage when they allconnect connected, they have to be aware of each other, they will have their chance to connect damages in court amongst each other.

Allconnect – These are the bundlers, Sdg&e offer the bundling of services which also includes cox internet services, it has been found that these bundlers Allconnect have the advantage of manipulating services in controlling cell phones, air conditioners, through subpoenas and evidence this is a proven fact all data spikes from these energy sources  (smart meters) will show the increase of energy going through our outlets it's capable of switching devices on/off,  you  can even feel the heat generated by these energy spikes which may or even has caused fires, devices to burn up catch fire. They speak of data usage and also increase in electric use on energy bills this also a reason. Everywhere I walk sit I can feel the energy surges and spikes by the increase of the motors within these devices' refrigerator, stove, even the motor on my room air freshener buzz high buzz low, the city had to come and inspect a electric panel to cease my humidifier/air conditioner from turning on and off on it's own. Once I could NOT move, I was limp and lame, thank God I was able to reach my humidifier/air conditioner, God said turn that on, the air began to work with my system I got up drank full glass of turmeric and water, beet juice. I almost died, if God didn't tell me to try to reach that humidifier/air conditioner. In just typing this document it's being manipulated; I will show how through court hearing.

Steven Lee Properties – In moving and relocating in to this environment July 2017, I found within a year by October 2017, my health had begun to degenerate I couldn't go to classes as scheduled my working schedule had decreased, it became so difficult to even carry my texts books. I continual brought to Steven Lee Properties attention the disturbances that had begun with devices the body surges I had begun to continually feel. I would call Steven Lees Properties, sdg&e, cox internet, to try and find the reasons behind the energy I was feeling. I feel as if someone was continual torching me. I had to line my bed with cardboard, on top of that foil, I even started investing in different energy readers; Such as Klein multimeter to consistently measure the energy within my environment. The defendants would say 'you're the ONLY ONE' calling consistently with these complaints, for 4 years I ran around with this they even began trying to say I have a mental issue, only to find out by March 2021 this environments energy source was through the smart meters. When it was brought to Steven Lee Properties attention about the smart meters, I was given a notice of rental agreement termination and had to relocate within 90 days. Steven Lee Properties blamed the reason for the eviction notice was because I had gotten upset over a pissy drink who had been stalking me for years that I reported while in this environment reasons for the eviction. Steven Lee Properties was upset at the fact of having to change the energy source (smart meter) to analog meter. So, with this claim it may be decided the real reason for the eviction once all evidence is show in court the real reason behind the eviction may be revealed and my housing record cleared and my mental stability never be in question again.

R V Management/Navajo Bluffs – Upon relocating into this environment May 12th, 2021 all was fine until May 22nd, 2021, again I began to physically feel these energy surges again, I couldn't figure out why, again I began calling sdg&e, Cox internet Navajo Bluffs management. My in-home care social worker drastically telling them,

'I'm burning up again in this environment. I'd be calling sdg&e etc. saying why what's going on, sdg&e would say on 1 occasion they didn't even receive the call it was not on there log only again to these properties have the same energy sources, One Way smart meters. Again, these individuals began disrespecting me treating me as if I'm an idioit, crazy person trying to find reasons to evict me. Here again they're maintenance tried to say I was a problem when dealing with a water issue they've had way before I even moved here maintenance tried to blame leakage on me! I haven't even asked them to switch the energy source (smart meter) to analog because I am afraid again what will happen. So, I have to sleep with a high energy motor from my fan propped up against my bed and sofa to void the feeling of the surges I physically feel. So, I have to vibrate and shake consistently 24 hours while sitting on sofa or laying on my bed. I sit on books and again card board. I will show pictures in evidence of how I have to live.

Bay Vista Housing Partners/Logan property Management – Are a part of this claim due to the fact after becoming ill in October 2017, I began to review medical records only to find that this gland in my brain had begun to enlarge while living in this environment. My Pituitary gland which is enlarged now, had actually began in 2012 within this housing environment. Through going back and forth with the doctors and the Bay vista housing partners about the matter as said in my introduction, through the advice from my support group I was told to leave and relocate. I Relocated and everything was fine for 5 years, until moving back into San Diego in 2017. Bay vista housing partners and Logan property management and I had a conference and it was agreed that I would relocate June 2012, when I came back to the property to on a Friday before June 1st 2012, I found an illegal eviction notice on my door, If I had of waited until that Monday Morning to begin to pack there would have been a lock on my door and I would have not been able to get my things. Only to find out that now they too have these energy sources (smart meters). I thought it was mold and

asbestos in which I still have reports from Amour mold and asbestos mediation documents that do show positive readings, but upon going to court I was threaten by there attorneys, 'saying if you go in here and the judge does not agree I would have to move within a week. These individuals are known to be damaging in Los Angeles being part of Amerland individuals, my having a traumatic brain injury I was afraid and didn't get to represent my case appropriately, I relocated in 30 days. Only to find out now they have the same energy sources (smart meters) in their environment.

Housing Urban and Development/HUD – Has to be apart of this claim due to the fact they are in agreement with these Property management entities and they have programs; such as utility allowance, which means they have knowledge of these energy sources (smart meters) to balance tenants with housing vouchers. They allow a certain amount of allowance to figure out rate of rental fee. So, within this claim a subpoena may be issued to actually reveal how they are contacting and collecting this data for energy usage with these property owners and managers…Someone is handling and clocking data remotely energy usage causing individuals to burn drastically. We have to find who is in control of this power, energy remotely causing power to go up and down increasing the surges. I feel this is a way to torture individuals, I for one am being tortured, I want to know who is torching me. Through the subpoena process we will be able to find exactly which one of these entities are in charge, they all communicate together so we will have to see. I also don't appreciate my roof being consistently threaten by these induvials trying to kill me consistently over their dishonesty and negligent systems. With this medical condition no one knows my research states the longest I have to live would be 5 years!

Kaiser Hospital/California Medical Board – These defendants are last because they're the reason I suffered for 4 years and had to deal with all these other dishonest entities. After relocating to San Diego due to section 8 housing came through, I thought to

1  become more independent and move closer to my place of employment 'San Diego
2  Community College districts, San Diego City College'.  I moved in this environment,
3  July 2017 as mentioned in introduction not even within a year I was falling very Ill
4  and weak, I made an appointment with at that time my medical facility Kaiser
5  Hospital on October 18th, 2017. God said to me don't go in there just talking like you
6  do  he said to write down my medical symptoms and concerns, so I did exactly just
7  that I went in there with 3 pages of medical concerns and symptoms, my appointment
8  was around 9 am or 10 am, checking the nurses checked me in and I sat in the clinics
9  waiting room and I waited and waited and waited, the doctor was about 45 minutes
10 late, so by the time they arrived I was very irritated due to them being late, so I began
11 speaking and went right directly to the point started reading off my 3 pages of list of
12 symptoms and medical concerns we didn't hit it off at all mostly because they were
13 late and was really acting weird and treating  me very low but I kept on reading I
14 actually have a recording of the meeting I have found that having this type of
15 traumatic Brain injury individuals take advantage and try to really put you in spots of
16 dishonest and try to say I am mental, which is why with each of these defendants will
17 be addressed to clear this type of matter up and see I am clear and sound of mind,
18 anyway by the end of the appointment The neurologist said there is nothing wrong
19 with your brain injury and my symptoms had nothing to do with my medical
20 symptoms, in fact he even put something  a borderline psychiatric problem, so right
21 away after the visit I spoke with  Idara the manager of the neurology department
22 explained to her my concerns we even sat and talked with my support Ms. Noel and
23 myself to bring the matter to her attention, nothing happened or was done, I was
24 continually having problems bleeding out of my ears, I have even saved the cotton
25 swabs to always have proof of this matter, a year went by I finally changed medical
26 coverage ...hold it let me go turn my T,V back on as I said prior, these people are
27 controlling our devices so through the subpoena process we may see the surge time
28 now it's 2:38 am, September 10th were going to  lock this time we will see the

interruption on the data and se who and what has caused this interruption this morning. Now let's get back to the matter after a year I switched heath coverage, right away my new Primary said let's get you a CT scan the date was December 31, 2018 and yes, the CT scan showed an enlarged pituitary gland to back the CT scan up the following year February 1st, 2019 the doctor she ordered an MRI which backed the CT scan which showed the enlargement and up until this year August 25th 2021 shows it's still there and a tiny bit larger. This is why I have to come in front the justice system so these defendants and the world take this environmental energy sources seriously and understand the medical issues and its connections to our technology with in our environments and our communities seriously. They ALL say and have said YOU'RE THE ONLY ONE, YOU'RE THE ONLY ONE, yes, I am the ONLY ONE with such devastating damage to my Brain which makes me more sensitive to this technology than others, even though it's actually affecting all of us. This brings into attention my grandson passing in March 202, when I was actually sending a fax to SDG&E about the matter I received a phone call from my father telling me my grandson passed they found him clutching his pillow as he was sleeping which reminds SOOO much of myself clutching my pillow trying to survive through ever night and day…WE have to tell the world to look out for their loved ones grandparents wives, brother, sisters , the medical administration has to learn to address ones environment in which we all are living this is answers to all or most of our medical issues…So please please check your families and loved ones….This is why I am here. I love you all.  I need help and assistance in relocating to a safer environment, clothes hats, shoes coats, I myself have began the investing but I need assistance to find a safe a place, please please help me. Not one doctor has told me what not to do what to avoid by me being the engineer that I am I designed my own diet I have been living on since January 2019, I kept the receipts research notes and everything…I know what I am speaking of, I created the corona virus vaccine along with theses billion dollar companies, when we were laid off march 2020 from the San

1  Diego Community College District, within a week I outlined the coronavirus vaccine
2  requirements, it is now public record In the California Department of Technology,
3  this is what I will show the Jury so they will know I am the specialist I say I am, I am
4  the expert witness I  have a disability But I am good and top notch. And believe me I
5  am ready for the defendants. The defendants feel our lives are expendable, we are
6  worth having a life full of love and honesty to all individuals in the world.

19  DATED: September 10, 2021

20  YOUR NAME
21  In Pro Per

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF SAN DIEGO

# AMERICANS WITH DISABILITIES ACT (ADA) PACKET



| FORMS INCLUDED IN THIS PACKET | |
|---|---|
| Instruction Sheet for JC Form #MC-410 | SDSC Form #ADM-076 |
| Request for Accommodations by Persons with Disabilities and Response | Judicial Council Form #MC-410 |
| California Rules of Court | SDSC Form #ADM-076A |



# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

### INSTRUCTION SHEET FOR JC FORM #MC-410

REQUEST FOR ACCOMMODATIONS
BY PERSONS WITH DISABILITIES AND RESPONSE
Per Cal. Rules of Court, rule 1.100

### KEEP THIS INSTRUCTION SHEET FOR REFERENCE

A.  Complete the attached form to request assistance during your visit to the court.  If you need help with the form, please ask court staff or call the ADA Coordinator at (619) 450-5253.

   NOTE:  Please provide your phone number and fax number (if available) in the applicant section of the Request for Accommodations by Persons with Disabilities and Response (JC Form #MC-410) to allow staff to contact you if there are any questions.

B.  If you are involved in more than one court case, you must submit a <u>separate</u> Request for Accommodations by Persons with Disabilities and Response (JC Form #MC-410) for <u>each case</u>.

C.  Submit the completed form to staff in the courtroom, at any public counter, or mail it to the address below.  You should give the court as much notice as possible, generally and preferably at least five days, to allow time for the court to respond to your requested need for accommodation.  Allow extra time if your request is mailed.

   **San Diego Superior Court**
   **Attention: ADA Coordinator**
   **P. O. Box 120128**
   **San Diego, CA 92112-0128**

   If you are running short of time, your request may be faxed to the ADA Coordinator at (619) 450-7158.

D.  If you are unsure about the status of your request, please call the ADA Coordinator at the phone number listed above.

E.  If your request is denied, you may seek review of the denial as provided in Cal. Rules of Court, rule 1.100 (g)(1) and (2).

---

SDSC ADM-076 (Rev. 12/12)                      **INSTRUCTION SHEET**                      Cal. Rules of Court, rule 1.100
                                               **FOR JC FORM #MC-410**



# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

## CALIFORNIA RULES OF COURT, RULE 1.100

**Rule 1.100. Requests for accommodations by persons with disabilities**

**(a) Definitions**

As used in this rule:

(1) "Persons with disabilities" means individuals covered by California Civil Code section 51 et seq.; the Americans With Disabilities Act of 1990 (42 U.S.C. §12101 et seq.); or other applicable state and federal laws. This definition includes persons who have a physical or mental impairment that limits one or more of the major life activities, have a record of such an impairment, or are regarded as having such an impairment.

(2) "Applicant" means any lawyer, party, witness, juror, or other person with an interest in attending any proceeding before any court of this state.

(3) "Accommodations" means actions that result in court services, programs, or activities being readily accessible to and usable by persons with disabilities. Accommodations may include making reasonable modifications in policies, practices, and procedures; furnishing, at no charge, to persons with disabilities, auxiliary aids and services, equipment, devices, materials in alternative formats, readers, or certified interpreters for persons with hearing impairments; relocating services or programs to accessible facilities; or providing services at alternative sites. Although not required where other actions are effective in providing access to court services, programs, or activities, alteration of existing facilities by the responsible entity may be an accommodation.

*(Subd (a) amended and relettered effective January 1, 2007; adopted as subd (b) effective January 1, 1996; previously amended effective January 1, 2006.)*

**(b) Policy**

It is the policy of the courts of this state to ensure that persons with disabilities have equal and full access to the judicial system. To ensure access to the courts for persons with disabilities, each superior and appellate court must delegate at least one person to be the ADA coordinator, also known as the access coordinator, or designee to address requests for accommodations. This rule is not intended to impose limitations or to invalidate the remedies, rights, and procedures accorded to persons with disabilities under state or federal law.

*(Subd (b) adopted effective January 1, 2007.)*

**(c) Process for requesting accommodations**

The process for requesting accommodations is as follows:

(1) Requests for accommodations under this rule may be presented ex parte on a form approved by the Judicial Council, in another written format, or orally. Requests must be forwarded to the ADA coordinator, also known as the access coordinator, or designee, within the time frame provided in (c)(3).

(2) Requests for accommodations must include a description of the accommodation sought, along with a statement of the impairment that necessitates the accommodation. The court, in its discretion, may require the applicant to provide additional information about the impairment.

**CALIFORNIA RULES OF COURT, RULE 1.100**

(3) Requests for accommodations must be made as far in advance as possible, and in any event must be made no fewer than 5 court days before the requested implementation date. The court may, in its discretion, waive this requirement.

(4) The court must keep confidential all information of the applicant concerning the request for accommodation, unless confidentiality is waived in writing by the applicant or disclosure is required by law. The applicant's identity and confidential information may not be disclosed to the public or to persons other than those involved in the accommodation process. Confidential information includes all medical information pertaining to the applicant, and all oral or written communication from the applicant concerning the request for accommodation.

*(Subd (c) amended effective January 1, 2007; previously amended effective January 1, 2006.)*

**(d) Permitted communication**

Communications under this rule must address only the accommodation requested by the applicant and must not address, in any manner, the subject matter or merits of the proceedings before the court.

*(Subd (d) amended effective January 1, 2006.)*

**(e) Response to accommodation request**

The court must respond to a request for accommodation as follows:

(1) In determining whether to grant an accommodation request or provide an appropriate alternative accommodation, the court must consider, but is not limited by, California Civil Code section 51 et seq., the provisions of the Americans With Disabilities Act of 1990 (42 U.S.C. § 12101, et seq.), and other applicable state and federal laws.

(2) The court must promptly inform the applicant of the determination to grant or deny an accommodation request. If the accommodation request is denied in whole or in part, the response must be in writing. On request of the applicant, the court may also provide an additional response in an alternative format. The response to the applicant must indicate:

(A) Whether the request for accommodation is granted or denied, in whole or in part, or an alternative accommodation is granted;

(B) If the request for accommodation is denied, in whole or in part, the reason therefor;

(C) The nature of any accommodation to be provided;

(D) The duration of any accommodation to be provided; and

(E) If the response is in writing, the date the response was delivered in person or sent to the applicant.

*(Subd (e) amended effective January 1, 2010; previously amended effective January 1, 2006, and January 1, 2007.)*

**(f) Denial of accommodation request**

A request for accommodation may be denied only when the court determines that:

(1) The applicant has failed to satisfy the requirements of this rule;

(2) The requested accommodation would create an undue financial or administrative burden on the court; or

(3) The requested accommodation would fundamentally alter the nature of the service, program, or activity.

*(Subd (f) amended effective January 1, 2007; previously amended effective January 1, 2006.)*

**(g) Review procedure**

    (1) If the determination to grant or deny a request for accommodation is made by nonjudicial court personnel, an applicant or any participant in the proceeding may submit a written request for review of that determination to the presiding judge or designated judicial officer. The request for review must be submitted within 10 days of the date the response under (e)(2) was delivered in person or sent.

    (2) If the determination to grant or deny a request for accommodation is made by a presiding judge or another judicial officer, an applicant or any participant in the proceeding may file a petition for a writ of mandate under rules 8.485–8.493 or 8.930–8.936 in the appropriate reviewing court. The petition must be filed within 10 days of the date the response under (e)(2) was delivered in person or sent to the petitioner. For purposes of this rule, only those participants in the proceeding who were notified by the court of the determination to grant or deny the request for accommodation are considered real parties in interest in a writ proceeding. The petition for the writ must be served on the respondent court and any real party in interest as defined in this rule.

    (3) The confidentiality of all information of the applicant concerning the request for accommodation and review under (g)(1) or (2) must be maintained as required under (c)(4).

    *(Subd (g) amended effective January 1, 2010; previously amended effective January 1, 2006.)*

**(h) Duration of accommodations**

    The accommodation by the court must be provided for the duration indicated in the response to the request for accommodation and must remain in effect for the period specified. The court may provide an accommodation for an indefinite period of time, for a limited period of time, or for a particular matter or appearance.

    *(Subd (h) amended effective January 1, 2006.)*

*Rule 1.100 amended effective January 1, 2010; adopted as rule 989.3 effective January 1, 1996; previously amended effective January 1, 2006; previously amended and renumbered effective January 1, 2007.*

**Advisory Committee Comment**

**Subdivision (g)(2).** Which court is the "appropriate reviewing court" under this rule depends on the court in which the accommodation decision is made and the nature of the underlying case. If the accommodation decision is made by a superior court judicial officer and the underlying case is a limited civil, misdemeanor, or infraction case, the appropriate reviewing court is the appellate division of the superior court. If the accommodation decision is made by a superior court judicial officer and the case is anything other than a limited civil, misdemeanor, or infraction case, such as a family law, unlimited civil, or felony case, the appropriate reviewing court is the Court of Appeal. If the accommodation decision is made by a judicial officer of the Court of Appeal, the appropriate reviewing court is the California Supreme Court.